IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02576-CMA-NRN

JENNY M. RAMOS, as assignee of Mario Benavides,

Plaintiff,

v.

THE HERTZ CORPORATION a/k/a Hertz Rent A Car a/k/a/ Hertz Car Sales a/k/a Hertz Claim Management Corporation,

Defendant.

---

**ORDER ON PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES**
**[Dkt. #38]**

---

This matter comes before the Court on Plaintiff's Motion to Strike Defendant's Affirmative Defenses. The Court has reviewed the Motion and all responsive papers. On September 12, 2018, the Court heard extensive argument by counsel on the Motion. For the reasons outlined below, the Motion is **DENIED**.

**Background**

This insurance bad-faith case arises out of a head-on automobile collision that occurred in Adams County in 2014. The Plaintiff, Jenny M. Ramos ("Plaintiff"), was injured in the crash. Per the Complaint, the at-fault vehicle was a rental car, owned by Defendant The Hertz Corporation ("Hertz"). At the time of the accident, the rental vehicle was not being driven by the renter, Mr. Allen George ("Mr. George"). Mr. George, apparently, had given the rented car to Mr. Mario Benavides ("Mr. Benavides") to drive. According to Hertz's Amended Answer to the Complaint (Dkt. #36), Mr. Benavides was under the influence of drugs at the time he was driving the borrowed

rental vehicle. In fact, per Hertz's Amended Answer, the reason Mr. George had rented the car from Hertz was because Mr. Benavides had crashed Mr. George's Pontiac Grand Prix only a few days earlier. Mr. Benavides' Colorado driver's license had also been revoked (under the habitual traffic offender statute) prior to his asking Mr. George to borrow the rented car, allegedly making Mr. Benavides' operation of Hertz's car a felony offense. Mr. Benavides allegedly had numerous prior intoxication and driving under the influence convictions.

When Mr. George rented the vehicle from Hertz, he expressly declined any insurance coverage in the rental agreement.

On August 3, 2014, Plaintiff requested that Hertz tender the alleged policy limit of $25,000, based on Plaintiff's assertion that Hertz was obligated by law to insure its rental vehicle, regardless of whether the renter (Mr. George) declined coverage.

One issue in this case is whether Hertz, as owner of the vehicle, was required by Colorado law to insure the car, despite the fact that the renter had declined insurance. Another issue is, assuming without deciding that the renter who declined insurance (Mr. George) was nevertheless insured by operation of law, whether that insurance would have transferred to an arguably permissive user (Mr. Benavides), who was barred by Colorado law from driving because he lacked a valid driver's license.

In its Amended Answer, Hertz disputes that it was mandated by law to provide insurance to Mr. George, since Mr. George had declined insurance on the rental agreement. Hertz also disputes that Mr. Benavides was a permissive user. Hertz alleges in its Amended Answer that Mr. Benavides was instead a "converter," in part because Mr. Benavides likely failed to disclose his lack of a valid driver's license to Mr. George when borrowing the car.

2

But the case gets even more complicated.  Hertz refused to tender $25,000 to Plaintiff within the deadline set for a response and, just over a month later, the injured Plaintiff sued Mr. Benavides in state court in Adams County for her injuries.  The state court case was then resolved in part by the execution of a *Nunn* agreement between Plaintiff and Mr. Benavides.  *See Nunn v. Mid-Century Insurance Company*, 244 P.3d 116 (Colo. 2010).  Per the *Nunn* agreement, Mr. Benavides assigned his claims against Hertz (for breach of contract and for insurance bad faith) to Plaintiff in exchange for Plaintiff's agreement not to execute any judgment beyond available insurance policy limits against Mr. Benavides' personal assets.  In that agreement, Mr. Benavides and Plaintiff also purportedly agreed to proceed to an arbitration to determine the amount of damages to which Plaintiff would be entitled.

The arbitration was scheduled.  Plaintiff alleges Hertz was invited to participate and appear to present a defense on behalf of Mr. Benavides.  Hertz did not appear at the arbitration.  Neither did Mr. Benavides.  As a result, the arbitrator was presented with only evidence from Plaintiff, Plaintiff's witnesses, and Plaintiff's experts.  That arbitration resulted in a $3.426 million judgment against Mr. Benavides and in favor of Plaintiff.

In her Complaint, Plaintiff purports to step into the shoes of Mr. Benavides (having been assigned his claims against Hertz) and insists that "as a consequence of the misconduct by Hertz – including its failure to resolve the [case against Mr. Benavides] within the policy limits without delay – Mr. Benavides was deprived of the opportunity to put the matters at issue behind him and has now been exposed to a high adverse judgment against him."  (Dkt. #1 at ¶12.)  Plaintiff asserts that having been assigned Mr. Benavides' rights to any claims against Hertz for collection of the judgment

entered after the state court arbitration, she has the right to prosecute those claims in a civil action against Hertz, and retain the proceeds of such action. (Dkt #1 ¶13.) In the Scheduling Order entered by the Court, Plaintiff states that she is seeking $3.426 million in damages from Hertz plus interest which continues to accrue, plus non-economic damages for Hertz's alleged bad faith. (Dkt. #33 at 7-8.) Thus, a demand for $25,000 in alleged insurance policy limits has transmogrified into a claim for nearly $3.5 million-plus in damages (and potentially multiples of that, given the bad faith claims in the case).

## Hertz's Defenses and Affirmative Defenses

Hertz, in its Amended Answer, recites multiple reasons why it is not liable to Plaintiff for anything, much less the $3.5 million+ being sought. Some of these reasons constitute straight denials of Plaintiff's assertions. For example, at Paragraph 7 of the Complaint, Plaintiff asserts that at the time of the collision, the vehicle operated by Mr. Benavides "was insured by Hertz." Hertz denies that allegation. (*See* Dkt. #36 ¶7.) This is not an affirmative defense. Plaintiff will have to prove at trial (or via a motion pre-trial) that the vehicle was insured by Hertz. Similarly, Hertz denies that it has somehow "exposed" Mr. Benavides to a high adverse judgment against him. *See* Complaint (Dkt. #1 at ¶12); Amended Answer (Dkt. #36 ¶12). This, again, is not an affirmative defense, but merely a denial of something Plaintiff will have to affirmatively prove.

Other Hertz defenses do appear to be classic affirmative defenses that will require proof of facts (or legal argument) by the Defendant at trial or on motion that, if proven, would negate Plaintiff's claims. *See* Black's Law Dictionary, 6th ed. (1990) (defining "affirmative defense" as a matter asserted by a defendant in a pleading which,

4

"assuming the complaint to be true, constitutes a defense to it"). Rule 8(c)(1) requires a defendant in responding to a pleading to affirmatively state any affirmative defense, including, among others, assumption of risk, contributory negligence, estoppel, failure of consideration, fraud, illegality, release, statute of frauds, and waiver.

Hertz recites a number of factual allegations purporting to support its affirmative defenses. (*See* Dkt. #36 ¶¶29-50.) Hertz then lists the following, which it characterizes as "affirmative defenses."

First, Hertz asserts the affirmative defense of "fraud and collusion," alleging that Mr. Benavides, Plaintiff, Plaintiff's attorney Mr. Ridder, and the arbitrator colluded to generate a grossly overinflated and unjust damage award through the arbitration process, colluding to conduct a "kangaroo court," which only admitted and considered one-sided and exaggerated evidence.

Second, Hertz asserts the defense of fraud against Mr. Benavides in obtaining permission, if any, to operate the Hertz rental vehicle from Mr. George, because Mr. Benavides concealed and failed to inform Mr. George that his driver's license had been revoked. Because Plaintiff, as an assignee, stands in the shoes of Mr. Benavides, if Mr. Benavides had no insurance because of fraud, then Plaintiff has no claim to insurance coverage.

Third, Hertz asserts the defense of failure of consideration for the contract of insurance with Hertz, if any. Hertz asserts that because Mr. George (and certainly Mr. Benavides) failed to purchase any liability coverage, Hertz received no consideration and was not obligated to provide insurance.

Fourth, Hertz asserts the defense of illegality, pleading in the alternative that if Mr. George knew that Mr. Benavides' license had been revoked and let him use the rental car anyway, then any "permission" would have been void as illegal.

Fifth, again pleading in the alternative, Hertz alleges that if Mr. Benavides were somehow covered by Hertz's insurance, Mr. Benavides failed to cooperate with Hertz in the defense by failing to report the accident and failing to provide any defense to the arbitration proceeding.

Sixth, Hertz asserts the criminal acts exclusion to any insurance that Mr. Benavides may have had with Hertz by his criminal acts in operating the rental car in an intoxicated or drugged condition.

Seventh, Hertz asserts that Mr. Benavides was not a permissive user, but instead a converter of the rental car, which invalidates any applicable liability insurance coverage.

Eighth, Hertz asserts that the rental agreement between it and Mr. George specifically prohibited Mr. George from permitting anyone else to operate Hertz's rental car, and, as such, any permission given was invalid and void.

Ninth (echoing in part its fraud and collusion defense), Hertz asserts that the arbitration in the underlying litigation was not conducted by a neutral arbitrator, was not an adversarial proceeding, and has no legitimacy or value in establishing the amount of damages against Hertz in this case.

Tenth, Hertz asserts (not really as an affirmative defense) that because the renter declined liability insurance coverage when he rented the car, there was no Hertz insurance coverage on the date of the accident.

6

Eleventh, Hertz asserts (again, not really as an affirmative defense) that it is not required to provide the minimum compulsory liability coverage stated in Colo. Rev. Stat. §10-4-619(1) because it is a motor vehicle rental company, as provided by Colo. Rev. Stat. §10-4-608(1)(c), and therefore there is no statutorily required insurance from Hertz in this case.

**Plaintiff's Motion to Strike Affirmative Defenses**

Plaintiff has moved to strike Hertz's affirmative defenses. (Dkt. #38.) Plaintiff claims Hertz's affirmative defenses should be stricken primarily for two reasons.

First, Plaintiff argues that Hertz's proposed affirmative defenses "asserting that there is no insurance" should be stricken as futile. This is, essentially, an argument that, as a matter of law, Hertz was required to insure its rental car, regardless of Mr. George's declination of coverage, regardless of Mr. Benavides' allegedly fraudulent obtaining of permission to drive the car (if he got permission at all), regardless of Mr. Benavides alleged status as a converter, and regardless of the Colorado statute that appears to exempt rental car companies from any mandatory insurance obligation. Plaintiff is thus seeking, in the context of a motion to strike, a definitive dispositive ruling that Hertz necessarily insured the subject vehicle, regardless of what other circumstances may have surrounded the vehicle's use. (Dkt #38 at 3 ("[P]erhaps more importantly Colorado law absolutely precludes Hertz from renting uninsured vehicles in Colorado.")). Part of Plaintiff's argument on this issue includes reference to material outside the pleadings – such as supposed admissions by Hertz in its claim log notes about its "knowledge that Colorado requires it to comply with compulsory minimum insurance laws." (Dkt #38 at 5.)

Second, Plaintiff asserts that the defense of fraud or collusion in the arbitration process should be stricken for lack of the particularity required under Rule 9(b). Plaintiff also claims that Hertz's asserted defense of fraud or collusion with respect to the arbitration are "impertinent as they fail to state a claim and are contradicted by Hertz' own statements." (Dkt #38 at 9.) Per Plaintiff, under Rule 9(b), all averments sounding in fraud must include allegations as to "*what* misrepresentations were made by defendant, *to whom* these misrepresentations were made, *when* these misrepresentations were made, or *how* these misrepresentations furthered the alleged fraudulent scheme." (*quoting Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 986 (10th Cir. 1992) (emphasis in original)). Plaintiff also makes factual arguments (citing exhibits) about how Hertz cannot be allowed to mount a "fraud or collusion" defense, when Hertz itself created the one-sided arbitration scenario by refusing to attend. (Dkt #38 at 9.)

**Standard for Striking an Affirmative Defense**

Federal Rule of Civil Procedure 12(f) permits the court to "strike from a pleading an insufficient defense." A defense is insufficient if it cannot succeed, as a matter of law, under any circumstances. *S.E.C. v. Nacchio*, 438 F. Supp. 2d 1266, 1287 (D. Colo. 2006); *Unger v. U.S. West, Inc.*, 889 F. Supp. 419, 422 (D. Colo. 1995); *Resolution Trust Corp. v. Tri–State Realty Investors of K.C., Inc.*, 838 F. Supp. 1448, 1450 (D. Kan. 1993).

Motions to strike will not be granted unless the insufficiency of the defense is clearly apparent and no factual issues exist that should be determined in a hearing on the merits. *Alarid v. Biomet, Inc.*, No. 14-cv-02667-REB-NYW, 2015 WL 6376171, at *2 (D. Colo. Sept. 22, 2015); *Chavaria v. Peak Vista Comm. Health Centers*, No. 08-cv-

01466-LTB-MJW, 2008 WL 4830792, at *1 (D. Colo. Nov. 5, 2008) ("A defense should not be stricken if there is any real doubt about its validity, and the benefit of any doubt should be given to the pleader." (internal quotation marks and citation omitted)); 5A Wright & Miller, Federal Practice and Procedure § 1381, at 678 (1990)). The decision to strike an affirmative defense rests within the sound discretion of the district court. *Purzel Video GmbH v. Smoak*, 11 F. Supp. 3d 1020, 1029-30 (D. Colo. 2014). Rule 12(f) is intended to minimize delay, prejudice, and confusion by narrowing the issues for discovery and trial. *Sierra Club v. Tri-State Generation & Transmission Ass'n*, 173 F.R.D. 275, 285 (D. Colo. 1997) ("The rule's purpose is to conserve time and resources by avoiding litigation of issues which will not affect the outcome of a case.").

Professors Charles Alan Wright and Arthur Miller have explicitly recognized that motions to strike are not favored and, generally, should be denied.

> The district court possesses considerable discretion in disposing of a Rule 12(f) motion to strike redundant, impertinent, immaterial, or scandalous matter. However, because federal judges have made it clear, in numerous opinions they have rendered in many substantive contexts, that Rule 12(f) motions to strike on any of these grounds are not favored, often being considered purely cosmetic or "time wasters," there appears to be general judicial agreement, as reflected in the extensive case law on the subject, that they should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy . . . .

5C Wright & Miller, Federal Practice and Procedure § 1382 (3d. ed. 2004) (footnotes omitted). *See Burget v. Capital W. Sec., Inc.*, No. CIV-09-1015-M, 2009 WL 4807619, at *1 (W.D. Okla. Dec. 8, 2009) ("While motions to strike are generally disfavored, the decision to grant a motion to strike is within the discretion of the court.") (*citing Scherer v. U.S. Dep't of Educ.*, 78 F. App'x 687, 689 (10th Cir. 2003)). "Striking a pleading or part of a pleading is a 'drastic remedy and because a motion to strike may often be

made as a dilatory tactic, motions to strike under Rule 12(f) generally are disfavored.'" *Sai Broken Arrow C, LLC v. Guardian Emergency Vehicles, Inc.*, No. 09-CV-0455-CVE-FHM, 2010 WL 132414, at *5 (N.D. Okla. Jan. 8, 2010) (*quoting Burget v. Capital W. Sec., Inc.*, 2009 WL 4807619, at *1). "Allegations will not be stricken as immaterial under this rule unless they have no possible bearing on the controversy." *Id.*, at *5 (*quoting Bd. of Cnty. Comm'rs of the Cnty. of La Plata, Colo. v. Brown Group Retail, Inc.*, No. 08-cv-00855-LTB, 2009 WL 2514094, at *2 (D. Colo. Aug. 14, 2009)). "The Court must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defenses succeed." *Friends of Santa Fe Cnty. v. LAC Minerals, Inc.*, 892 F. Supp. 1333, 1343 (D. N.M. 1995) (Hansen, J.) (*quoting Carter–Wallace, Inc. v. Riverton Lab.*, 47 F.R.D. 366, 368 (S.D.N.Y.1969)) (internal quotation marks omitted).

**Analysis**

As is apparent from the recitation above, there are questions of fact here. And any questions of law are unclear and in dispute. In her motion to strike, Plaintiff herself cites evidence or documents from outside the pleadings that she alleges merit consideration in determining whether, under the circumstances of this case, Hertz insured this car when it was being driven by Mr. Benavides. With respect to the pure legal issue, whether a rental car company is required under Colorado law to provide liability insurance for a vehicle where the renting party declines coverage, it is enough to say that this is a legal question the answer to which is unclear and in dispute. Hertz emphasizes that the Colorado statutory provisions that appear to mandate insurance coverage for all owned vehicles, Colo. Rev. Stat. §10-4-619 and §10-4-620, also appear to exempt policies that arise "out of a motor vehicle rental agreement." (*See* Dkt #40 at

10

5 (citing exemption language appearing in Colo. Rev. Stat. §10-4-608 and §10-4-601(10)).  Plaintiff responds that a decision by the Colorado Supreme Court, *Aetna Cas. & Sur. Co. v. McMichael*, 906 P.2d 92, 99 (Colo. 1995), limits the applicability of the exemptions.  But that case was decided in the context of Uninsured/Underinsured Motorist coverage and not the mandatory insurance requirements of §10-4-619 and §10-4-620.

The Court is not prepared to decide this important legal question, to which there is no immediate clear answer, on a motion to strike.  *See Chavaria,* 2008 WL 4830792, at *1 ("A defense should not be stricken if there is any real doubt about its validity, and the benefit of any doubt should be given to the pleader." (internal quotation marks and citation omitted)); *Alarid*, 2015 WL 6376171, at *2; *Mohegan Tribe v. State of Conn.*, 528 F. Supp. 1359, 1362 (D. Conn. 1982) ("The presence of a substantial or seriously disputed question of law will preclude a district court from granting a motion to strike."). The parties have neither briefed nor adequately explained the language referring to the "motor vehicle rental agreement" exception to Colorado's compulsory coverage requirements.  Briefing on the legislative history of that language may be necessary to resolve the issue and the Court would welcome such briefing at the appropriate procedural moment.  Absent a clear answer to the question, the Court declines to strike Hertz's defenses that the rental vehicle was not insured, that Hertz was not obligated to insure the vehicle when Mr. George declined coverage, or that to whatever extent coverage did exist, it did not extend to Mr. Benavides because of his alleged status as a converter.

With respect to Hertz's defenses relating to alleged fraud or collusion in the arbitration award, the Court also will decline to strike those defenses.  In the *Nunn v.*

*Mid-Century Ins. Co.* case that provided the conceptual framework for the agreement reached between Plaintiff and Mr. Benavides, the Colorado Supreme Court was explicit in recognizing the dangers of fraud or collusion in generating an excessive or unreasonable stipulated judgment that could then be used against the insurer, without the insurer being able to defend itself. *See Nunn*, 244 P.3d at 123. But the court was reluctant to rule that all stipulated judgments are *per se* unenforceable against an insurer because of the "mere specter or fraud or collusion." *Id.* Instead, the court noted that "the existence of fraud or collusion can be determined at trial like any other issue of fact," that "our system of justice is adequately equipped to discern the existence of fraud and collusion," and "[t]he stipulated judgment thus is not binding on the insurer until after an adversarial proceeding before a neutral factfinder, providing the insurer with an opportunity to defend itself at trial." *Id.* (internal quotation marks and citations omitted).

The Colorado Supreme Court also noted that the actual amount of damages for which an insurer will be liable will depend on whether the stipulated judgment was reasonable. *Id.* Thus, even if the Plaintiff in this case meets her burden of proving that there was an insurance policy in place, and that Mr. Benavides was covered by and the beneficiary of that policy, and that Hertz acted in bad faith, the actual amount of damages for which Hertz would be liable would depend on whether the stipulated judgement (or in this case, the judgment based on the arbitration award), was reasonable. *Id.* Per the *Nunn* decision, Plaintiff will have the additional burden of proving that the $3.5 million arbitration award and associated judgment "is a reasonable reflection of the worth of her personal injury claims against [Mr. Benavides], and thus the proper measure of damages for her bad faith claim against [Hertz.]" *Id.*

12

In moving to strike Hertz's affirmative defense of "fraud and collusion," Plaintiff essentially seeks to take away from Hertz the one protection that the Colorado Supreme Court thought was important in these kinds of cases—the ability to show that there was something not right about an unreasonably large, unilaterally (or collusively) determined damages figure. The Court declines to do so.

Plaintiff rests its motion to strike on the provisions of Rule 9(b), arguing that Hertz's allegations of fraud and collusion are not pled with the requisite particularity. Rule 9(b)'s essential purpose is "to afford [a] defendant fair notice" of a plaintiff's claims so that he can fairly respond. *George v. Urban Settlement Servs.,* 833 F.3d 1242, 1255 (10th Cir. 2016). Therefore, "the most basic consideration for the federal court in making a judgment as to the sufficiency of a pleading for purposes of rule 9(b)" is the "determination of how much detail is necessary to give adequate notice to an adverse party and enable that party to prepare a responsive pleading." 5A Wright & Miller, Federal Practice and Procedure §1298 (2004), at 236. In determining whether a plaintiff has satisfied Rule 9(b), courts appropriately consider whether any deficiencies result from the plaintiff's inability to obtain information in the defendant's exclusive control. *Id.* (*citing Emery v. Am. Gen. Fin. Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998) (suggesting that "Rule 9(b) is relaxed upon a showing" that plaintiff is unable to obtain essential information in defendant's possession without pretrial discovery)); *see also, In re Burlington Coat Factory Sec. Liti.*, 114 F.3d 1410, 1418 (3rd Cir. 1997) (Rule 9(b)'s normally rigorous particularity rule has been relaxed somewhat where the factual information is peculiarly within the defendant's knowledge or control"); *Scheidt v. Klein*, 956 F.2d 963, 967 (10th Cir. 1992) ("Allegations of fraud may be based on information

and belief when the facts in question are peculiarly within the opposing party's knowledge and the complaint sets forth the factual basis for the plaintiff's belief.").

In this case, Hertz's affirmative defense of "fraud and collusion" has more to do with the arguably unreasonable result of the arbitration and the unilateral nature of the arbitration process, where only evidence submitted by Plaintiff was considered and not subject to any meaningful cross examination. Plaintiff has sufficient notice of the allegations to adequately prepare a response. As to Plaintiff's argument that Hertz has failed to provide the "who, what, where, and when" of the alleged fraud, this is not a typical fraudulent misrepresentation claim. Instead, the allegation appears to be that the outcome of the arbitration was corrupt or, at minimum, unreasonable. Plaintiff has enough information from this allegation to be able to defend the arbitration process and the reasonableness of the result. Whether the result of the arbitration was reasonable or not, and whether it was a result of fraud and collusion, or merely the result of an otherwise fair process that Hertz declined to participate in, to its own detriment, will be decided as a matter of fact at a later time. The Court will not strike it as a defense at this early stage of the case.

## Conclusion

For the foregoing reasons, it is hereby **ORDERED** that Plaintiff's Motion to Strike Affirmative Defenses (Dkt. #38) is **DENIED.**

Date: September 26, 2018

*N. Reid Neureiter*
_____
N. Reid Neureiter
United State Magistrate Judge