# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
## Judge Christine M. Arguello

Civil Action No. 17-cv-02576-CMA-NRN

JENNY M RAMOS, as assignee of Mario Benavides,

     Plaintiff,

v.

THE HERTZ CORPORATION, *a/k/a* Hertz Rent a Car, *a/k/a* Hertz Car Sales, *a/k/a* Hertz Claim Management Corporation,

     Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S DEFENSES

---

This matter is before the Court on Plaintiff Jenny Ramos' Motion for Summary Judgment on Defendant's Defenses (Doc. # 67) and Defendant Hertz Corporation's Amended Motion for Summary Judgment (Doc. # 72). Having thoroughly reviewed the underlying briefing, pertinent record, and applicable law, the Court grants Defendant's Motion and denies Plaintiff's Motion for the following reasons.

## I.    BACKGROUND

This case involves an insurance dispute arising out of an automobile collision. On March 7, 2014, Allen George[1] rented a car from Defendant. Mr. George did not

---

[1] Mr. George has died since the events at issue. (Doc. # 94 at 2.) He was not a party to this case.

purchase any insurance from Defendant, and the rental agreement that Mr. George executed indicated that no other person was permitted to use the car without prior written authorization from Defendant. (Doc. # 72 at 3.) However, on April 5, 2014, Mario Benavides was driving the rental car, and he collided with Plaintiff's car. Mr. Benavides did not have Defendant's written authorization to drive the car.

It is undisputed that Mr. Benavides' driver's license was revoked for being a habitual traffic offender in 2009, and his license had not been reissued at the time of the collision. (Doc. # 70-5 at 3.) It is also undisputed that Mr. Benavides was under the influence of drugs and or alcohol while he was driving. (Doc. # 70-6.)

At the time of the April 5, 2014 collision, Defendant was insured by an insurance policy ("the Policy") that was issued by ACE USA. (Doc. # 70-3.) The Policy provided limited coverage to individuals who rented cars from Defendant even if the renters declined to purchase insurance directly from Defendant, and it also provided coverage to individuals who were not renters under certain circumstances.[2] The Policy limit for bodily injury was $25,000 for each person and $50,000 per accident, and the limit for property damage was $25,000. (*Id*. at 7.)

On August 3, 2014, Plaintiff's counsel sent Defendant a demand letter which contained various medical records purporting to show some of the harm Plaintiff

---

[2] According to the terms of the Policy, ACE "will pay all sums that [it] become[s] legally obligated to pay, up to the Limit of Insurance," and Defendant, in turn, "must reimburse [ACE] up to the Deductible Amount for any Amounts" ACE pays under the Policy. (Doc. # 70-3 at 5.) Defendant's deductible per accident was equal to its limit of insurance, which was equal to the Minimum Financial Responsibility Limit for each state to which the Policy applied. The Policy limits referenced in this Order are specific to the state of Colorado. (*Id*. at 8); Colo. Rev. Stat. § 10-4-620 (requiring liability insurance in the amount of $25,000 per person and $50,000 per accident for bodily injury and $50,000 for property damage).

sustained as a result of the collision. (Doc. # 72 at 8.) The letter demanded that

Defendant pay the insurance policy limits of $25,000, and it set an unreasonable

deadline of one month for Defendant to tender such payment, after which the offer to

settle would be automatically withdrawn. Although Defendant made a counteroffer of

$14,806.09 (Doc. # 75 at 3), Plaintiff rejected that offer, and twelve days after the

deadline, on September 15, 2014, Plaintiff sued Mr. Benavides and Mr. George in

Colorado state court (Doc. # 70-8). Defendant was not a party to that case.

Subsequently, Plaintiff and Mr. Benavides entered into an agreement, according

to which Mr. Benavides agreed to participate in arbitration. (Doc. # 70-10 at 1.) Mr.

Benavides further agreed to assign to Plaintiff "all rights, title, and interest [Mr.

Benavides] may have to claims against [Defendant] for collection of the judgment

entered in the [state court] Lawsuit, including the rights to prosecute those claims in a

civil action and retain the proceeds from such an action." (*Id*. at 2.) In exchange, Plaintiff

promised "not to execute on or otherwise attempt to enforce any judgment resulting

from the arbitration against [Mr.] Benavides . . . ." (*Id*.)

The one-day arbitration hearing took place on Wednesday, September 27, 2016.

(Doc. # 70-11 at 2.) Mr. Benavides was not present at the hearing, and his counsel did

not enter an appearance. Additionally, Defendant, who was not a party to the case, did

not attend the hearing despite an invitation from Plaintiff. Thus, the only evidence that

formed the basis of the arbiter's decision was produced by Plaintiff. On November 22, 2016, the arbiter issued Plaintiff an award of $3,426,729.85.[3]

In the instant case, Plaintiff seeks recovery of the $3,426,729.85 arbitration award from Defendant under theories of breach of contract and bad faith insurance practices claims based on the car rental agreement between Plaintiff and Mr. Benavides. Both claims are based on the premise that Defendant is obligated—either as an insurer or third-party insurance policy administrator—to indemnify Mr. Benavides, as an insured, for the judgment entered against him in state court.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbot Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v.*

---

[3] Plaintiff argues that Defendant is "preclude[d] . . . from collaterally attacking or otherwise re-litigating the judgment entered against its insured." (Doc. # 53 at 8.) Assuming, *arguendo*, that Mr. Benavides were Defendant's "insured", Plaintiff's argument is legally erroneous. *Murphy-Sims v. Owners Ins. Co.*, No. 16-cv-00759-CMA-CBS, 2017 WL 2865679, at *7 (D. Colo. March 17, 2017) ("Colorado insurance law does not prohibit [an insurance company] from challenging the reasonableness of the damages entered in [an] underlying lawsuit simply because it paid for its insured's defense" and "issue preclusion does not bar [an insurance company] from challenging the reasonableness of the damages entered in the underlying law suit" when the insurance company was not a party in the underlying case). Plaintiff's counsel from Franklin D. Azar & Associates, PC should be aware of this Court's ruling in *Murphy-Sims* because the firm also represented the plaintiff in that case. To the extent Plaintiff's counsel's arguments in this case differ from those raised in *Murphy-Sims*, the Court finds those arguments to be unpersuasive. Further attempts to recycle the same argument in future cases will be similarly rejected by this Court.

*Muskogee, Okl.*, 118 F.3d 837, 839 (10th Cir. 1997). When reviewing motions for summary judgment, a court may not resolve issues of credibility, and must view the evidence in the light most favorable to the nonmoving party—including all reasonable inferences from that evidence. *Id*. However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id*. In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claims; rather, the movant need simply point the court to a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 644, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant meets its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy this burden. *Id*. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence from which a rational trier of fact could find for the nonmoving party." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id*. Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## III. DISCUSSION

Plaintiff's Amended Complaint raises two claims for relief. Specifically, Plaintiff alleges that Defendant "breached its contract with [Mr.] Benavides," and Plaintiff asserts that Defendant breached its duties to Mr. Benavides in bad faith. (Doc. # 91 at 3–4.) However, Defendant is entitled to summary judgment on both claims because there is no contractual relationship between Defendant and Mr. Benavides and Mr. Benavides was not an authorized driver of the vehicle. As such, Mr. Benavides is not entitled to coverage under the Policy.

The Policy defines "an insured" as "You [Defendant] for any covered 'auto'" and "anyone else while using with your [Defendant's] permission a covered 'auto' you own, hire or borrow . . . ." (Doc. # 70-3 at 4.) That definition was amended through an endorsement that was operative at the time of the April 5, 2014 collision. (*Id*. at 8.) As amended, the definition of "an insured" also included "Renters" and "Authorized Drivers" as long as:

    (a) the "Renter" or "Authorized Driver" is "Occupying" the "Rental Auto" while the "Rental Auto" is being operated by the "Renter" or "Authorized Driver", and

    (b) coverage has been afforded through and on file with Hertz Global Holdings, Inc. or any other Additional Named Insured acting as an "auto" rental facility including, but not limited to, Hertz Global Holdings, Inc.

    (c) all terms and conditions of the "Rental Agreement" have been met.

(*Id*.)

"Authorized Drivers" is a term defined by the Policy as "only those individuals who have a valid driver's license, are named on the 'Rental Agreement' or 'Insured Contract', and meet all rental requirements as stated in the 'Rental Agreement'." (*Id*. at 6.) A "Renter" is defined as "anyone renting or leasing a covered 'Auto' from the named insured [Defendant] under a 'Rental Agreement' or 'Insured Contract'." (*Id*.) Finally, a "Rental Agreement" is defined as "an agreement to rent or lease a 'Rental Auto' between the Named Insured [Defendant] and a 'Renter'." (*Id*.)

In sum, Mr. Benavides would qualify as "an insured" only if (1) he had Defendant's permission to use its rental car; or (2) he was a Renter or Authorized Driver and complied with the terms and conditions of the Rental Agreement. It is undisputed that Mr. Benavides did not have Defendant's express permission to use its rental car. It is also undisputed that Mr. Benavides was neither a Renter nor an Authorized Driver. Rather, Plaintiff argues that "[b]ecause Colorado follows the initial permission rule, Mr. Benavides was covered as a permissive user, as Mr. George was given initial permission by [Defendant] to use the vehicle and therefore had the authority to, and did, give permission to Mr. Benavides to use the vehicle." (Doc. # 75 at 11.) This argument fails because it is legally erroneous.

In the 1990s, the Supreme Court of Colorado did endorse an "initial permission rule" in the context of insurance liability coverage. *See Metro. Prop. & Cas. Ins. Co. v. Hertz Corp.*, 981 P.2d 1091, 1093 (Colo. 1999). Pursuant to the rule,

> once a named insured permits another to drive the insured vehicle on public highways, the No-Fault Act extends coverage to subsequent permittees. Such a permittee is an "insured" for purposes of the No–Fault Act because, by virtue of the chain of consent emanating from the named insured, she

has implied permission from the named insured to use the vehicle. . . .
Implied permission is considered from the perspective of the permittee, and
exists as long as the permittee does not know of the denial of actual
permission from the owner.

*Id*. at 1093–94 (citations omitted). Thus, the initial permission rule was based on an

interpretation of the Colorado No-Fault Act. *See id*. However, in 2003, the Colorado

General Assembly repealed the No-Fault Act. *See* Colo. Rev. Stat. § 10-4-600.

Pursuant to the current statutory scheme, an insured's minimum required

coverage is subject to exclusion when the insured "[i]s operating a motor vehicle as a

converter without a good faith belief that he or she is legally entitled to operate or use

such vehicle." *Id*. § 10-4-623(2)(b). A "converter" is defined as "a person other than a

named insured or resident relative who operates or uses a motor vehicle in a manner

that a reasonable person would determine was unauthorized or beyond the scope of

permission given by a named insured . . . ." *Id*. § 10-4-601(3). The factors relevant to

determining whether an individual is a "converter" are:

(a) the duration of the person's control over the motor vehicle;

(b) the circumstances surrounding the conduct of the person operating or
using the motor vehicle; and

(c) the person's good faith.

*Id*. § 10-4-601(3)(a–c).

Therefore, the original permission rule has been superseded by statute. As

initially formulated, the Colorado Supreme Court instructed that "[i]mplied permission is

considered from the perspective of the permittee, and exists as long as the permittee

does not know of the denial of actual permission from the owner." *Metro. Prop.*, 981

P.2d at 1094. However, the modern statutory scheme makes clear that implied

permission may exist, but it is to be assessed using an objective test based on a

reasonable person's perspective rather than the permittee's subjective perspective. *See*

Colo. Rev. Stat. § 10-4-601(3).

As applied to the instant case, the circumstances surrounding Mr. Benavides'

use of Defendant's rental car show that Mr. Benavides used the car as a converter.

Even if Mr. George gave Mr. Benavides permission to use Defendant's rental car, a

reasonable person in Mr. Benavides' position would not have thought he was authorized

to use the car because Mr. Benavides did not have a valid driver's license. *See, e.g.*,

*Progressive N. Ins. Co. v. Concord Gen. Mut. Ins. Co.*, 864 A.2d 368, 654 (N.H. 2005)

(driver "could not as a matter of law have had a reasonable belief that he was entitled to

drive the car when he knew that he did not have a valid driver's license, **despite any**

**permission** extended to him by his girlfriend." (emphasis added)).

In fact, due to his history as a habitual traffic offender, operating a car at the time

of the collision was likely a criminal act.[4] *See Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d

1039, 1054 (Colo. 2011) (driver did not have reasonable expectation of insurance

coverage for his felonious criminal acts). Moreover, Mr. Benavides drove the car while

under the influence of drugs and or alcohol, and a reasonable person would know that

---

[4] Plaintiff somewhat incredulously contends that facts related to Mr. Benavides' status as a habitual traffic offender are "irrelevant under Colorado law." (Doc. # 75 at 8.) Such a statement is indicative of a lack of understanding that the facts surrounding an individual's use of a car are relevant to determine whether the individual is classified as "a converter" pursuant to Colo. Rev. Stat. § 10-4-601(3). Whether an individual is a converter, in turn, is relevant to determine whether an individual had implied permission to use the vehicle in question.

driving while intoxicated exceeds the scope of any permissive use of a car. Under these circumstances, any belief that Mr. Benavides may have had that that he was authorized to drive Defendant's rental car could not have been held in good faith.

Accordingly, Mr. Benavides did not have permission—either express or implied—to drive Defendant's rental car. As a result, Mr. Benavides cannot be classified as "an insured" under the terms of the Policy, and Defendant owed no duty to insure Mr. Benavides. Therefore, Plaintiff's breach of contract claim fails because there is no evidence that Mr. Benavides ever entered into a contract with Defendant[5] or that Defendant had any obligations to Mr. Benavides based on a contract. *Long v. Cordain*, 2014 COA 177, ¶ 19 (noting that the first element of a breach of contract claim is the existence of a contract). Additionally, Plaintiff's bad faith claim fails as a matter of law because an insurer cannot be liable on such a theory if it is not under a duty to provide coverage. *See Peterson v. USAA Live Ins. Co.*, 353 F. Supp. 3d 1099, 1112 (D. Colo. 2018) (quoting *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1193 (10th Cir. 2009)).

## IV.    CONCLUSION

Based on the foregoing reasons, the Court ORDERS that Defendant's Amended Motion for Summary Judgment (Doc. # 72) is GRANTED. It is

FURTHER ORDERED that Plaintiff's Motion for Summary Judgment on Defendant's Defenses (Doc. # 67) is DENIED. It is

---

[5] Plaintiff's breach of contract claim also fails because Plaintiff has produced no evidence of consideration between Mr. Benavides and Defendant that could form the basis of a contract.

FURTHER ORDERED that Plaintiff's Motion to Strike Defendant's Second Motion for Summary Judgment (Doc. # 74) is DENIED. It is

FURTHER ORDERED that Defendant's Motion for Partial Summary Judgment Re: Effect of Prior Arbitration Award (Doc # 46) AND Defendant's first Motion for Summary Judgment (Doc. # 69) are both DENIED AS MOOT.

The Clerk of the Court respectfully is directed to enter judgment in favor of Defendant Hertz Corporation and against Plaintiff Jenny Ramos.

DATED: May 23, 2019

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge